PALMER PRESSED BRICK WORKS v.
STEVENSON et al.  (No. 983.)

(Court of Civil Appeals of Texas.  Amarillo.
May 3, 1916.)

1. FRAUDULENT CONVEYANCES ⬦⟹52(1) —
HOMESTEAD.

Part of the homestead property, not pre-
viously abandoned as such, may, without con-
sideration, be conveyed to the wife, becoming
her separate property, free from claims of the
husband's creditors.

[Ed. Note.—For other cases, see Fraudulent
Conveyances, Cent. Dig. §§ 118, 122–124; Dec.
Dig. ⬦⟹52(1).]

2. HUSBAND AND WIFE ⬦⟹150—IMPROVING
SEPARATE PROPERTY WITH COMMUNITY
FUNDS.

The wife's land cannot be sold for the
husband's debts, because of improvements made
thereon with community funds when he was in-
solvent, unless made to her knowledge with in-
tent to defraud his creditors, though the credi-
tors may have some remedy as to the improve-
ments.

[Ed. Note.—For other cases, see Husband and
Wife, Cent. Dig. §§ 575–581; Dec. Dig. ⬦⟹
150.]

Appeal from District Court, Dallas Coun-
ty; E. B. Muse, Judge.

Action by the Palmer Pressed Brick Works
against F. L. Stevenson and others.  From
an adverse judgment, plaintiff appeals.  Af-
firmed.

C. M. Smithdeal, of Dallas, for appellant.
W. N. Coombes, of Dallas, for appellees.

HENDRICKS, J.  In 1894 F. L. Stevenson,
a married man, acquired lot No. 12, in block
No. 9, in Fairview addition, 70x175 feet,
fronting on Simpson street, in the city of
Dallas.  In 1895 he built an 11-room house on
said lot, used thereafter as a boarding house,
and conducted by his wife, F. K. Stevenson.
Previous to the construction of the house,
Stevenson, the husband, built a barn on the
northeast corner of said lot, and in the
rear of said property, and in October, 1913,
he conveyed 45x45 feet out of said lot, on
which the barn was situated, to his wife, F.
K. Stevenson.  Prior to this conveyance to
the wife, the barn was not used, except for
purposes of storage; the horse owned by the
husband having been sold several years previ-
ous thereto.

In 1911 the husband, F. L. Stevenson,
became indebted to the appellant, Palmer
Pressed Brick Works, for the debt sued upon
in this case, and which was thereafter merg-
ed into judgment, and upon which an attach-
ment was issued and levied upon the part of
the lot conveyed to the wife, upon which the
barn was situated.  The wife was made a
party to this suit before the rendition of
final judgment, and upon the trial, as to the
ownership of the property, the court denied
appellant a foreclosure of the attachment
lien.  Another part of the lot—the northwest
corner of same—seems to have been sold to
other parties at a different time, and the

rear of the property, including the barn, was
at some time fenced separately from the
main house; but the rear of the lot seems
to have been used, at times for storing tim-
ber, and as a place for garbage, deposited in
a can, hauled off by the city.  The wife, F.
K. Stevenson, reconstructed the barn, at a
cost of about $200, into a tenant house; the
husband testifying that at times he used one
room of the same for an office, having his
desk and certain papers therein, in his busi-
ness as a contractor and carpenter.

[1] So far as this record shows, the barn,
on the rear of the homestead lot, whether
used or not for the accommodation of a
horse at the time of the conveyance by the
husband, constituted a part of the home-
stead; it was on the homestead lot.  The
husband had a right to deed any part of it to
the wife; previous to the date of the convey-
ance, we do not find sufficient evidence to
disclose segregation and abandonment of that
part of the homestead upon which the barn
was situated to divest it of its homestead
character.  When the wife received the deed,
it was her separate property, irrespective
of a consideration.  If she reconstructed the
barn into a tenant house, with her separate
property, the creditors could not reach any
part of it.

[2] It is claimed by the appellees that the
money used in reconstruction constituted her
separate property.  It is shown that, several
years before the conveyance to her of the
particular part of her lot, she received, in
different installments at different times, an
aggregate sum from her father's estate of
about $1,000.  This sum she mingled with the
earnings, claimed as her own, arising from
the boarding house conducted by her.  It is
not definite what the $200 represented.  In
any event, the strongest case that could be
made in favor of the creditor is a claim that
the community funds, or a part of same, min-
gled with separate funds (on account of the
confusion, making it community), entered
into improvements upon her separate proper-
ty, and constituted an asset for the benefit
of a creditor.  The record shows that at the
time of the conveyance the husband was in-
solvent.  If these funds constituted communi-
ty property, it is true that when the hus-
band is in such condition he could not give
the same to the wife.  Maddox v. Summer-
lin, 92 Tex. 483, 49 S. W. 1033, 50 S. W.
567.  Speer, in his law on Marital Rights, §
335, p. 419, in regard to improvements says:

"The title to the property still remains in
the wife, subject to this equity in favor of the
community; but it is not such an equity or
right in favor of the husband or the community
as that creditors of the husband may seize and
sell it upon execution"

—citing Schwartzman v. Cabell, 49 S. W.
113, as deciding the point, with numerous
other cases also cited as bearing upon the
question; also see Collins v. Bryan, 40 Tex.

Civ. App. 89, 88 S. W. 432, Kane v. Ammerman, 148 S. W. 817, and Hendricks v. Snediker, 30 Tex. 297. Justice Brown said, in the case of Maddox v. Summerlin, supra, 92 Tex. 487, 49 S. W. 1034:

"We conclude that the land of the wife cannot be sold at the suit of the creditor, unless the facts shall show that the husband made the improvements with his own, or the community funds with intent to defraud his creditors, and that the wife, knowing of such intent, participated in the fraud."

The wife testified:

"When Mr. Stevenson made me this deed, I knew the company (a contract company, in which the husband was interested) owed some debts. I did not know whether Mr. Stevenson did or not."

It is not shown whether the Mullican Contract Company, in which Mr. Stevenson was interested, was a partnership or a corporation. Whether or not an attachment or execution would subject the particular interest in the property to the debt of the creditor, we think the record is such that the trial court could have concluded that the facts did not show that the community funds (if regarded as such) were placed upon the wife's separate property, with a knowledge of the wife, with intention to defraud the husband's creditors.

On the whole, we think the judgment should be affirmed; and it is so ordered.